morning we have two cases today submitted on the briefs the first Villa Castellum number 19 7 2 9 4 5 20 7 1 5 4 7 those consolidated cases Villa Castellum versus Garland will be submitted on the briefs in our second case submitted on the briefs today it's number 23 9 Guzman Maldonado versus Garland also submitted on the briefs we'll hear argument first this morning in number 21 1 5 8 2 9 Jordan versus Howard miss Tucker good morning good morning may it please the court Lee Tucker for Mark Jordan I'll reserve two minutes for rebuttal I'll keep an eye on the clock your honors when Mark Jordan stepped in and ended the knife fight between Kenneth Mills and Paul Weakley there were no Bureau of Prison guards in the vicinity no one there in the area who had eyes on it furthermore none of the prison staff or guards were observing the surveillance monitors which had real-time footage showing the attack happening no one was there Mark Jordan stepped in placed his foot on the wrist of weekly who was holding the knife said break it up kicked the knife away both men stood up and walked away had Mark not intervened it's not unlikely that either Mills or weekly could have people who are victims of homicide in US prisons every year but he did and if he hadn't the Bureau of Prisons would have spent the next few days calling the briefed family being interviewed by the FBI girding themselves for possible lawsuit yes your honor assume all that's true and I think it nothing in this record suggests to the contrary can a prison have a rule that says one the use of physical force they could have that rule that's not the rule that well that's the next question I wanted to get to right seems to me pretty clear they could and there might be good reasons for it we don't want a third person involved in the fight it harder for us to police we don't know what will result there's a Seventh Circuit case that sort of says there's no the DOH said even if everything you say is true mr. Jordan our rules prohibit you from doing this so it seems to me they said they had such a rule I disagree your honor okay tell me why yeah if I may that's not what the DHO well I can read you I can read you the exact language from and what yes great tell me what you think he said it doesn't matter the DHO was addressing the issue of whether or not the actions by mr. Jordan constituted as an assault under code 2224 and the elements of that of course are a violence the threat of violence battery including the unconsented touching of another and the DHO is very specifically looking at that as well here's his language DHO leeweg despite Jordan's intentions and weeklies gratitude the DHO believes Jordan had no right to step in and physically break up an altercation between two inmates and then he said directly after that though your intent may have been to quell the situation you have no right to place your foot on another inmate so he seems to be saying that's our rule and then be what the said was because I determine you have no right I'm finding this to be by definition and assault and a violation okay so so let's that's what I wanted to work backwards from assuming let's assume there is no right of an inmate to come to the defense of another okay because that's what the DHO said at the common law there it's an affirmative defense to assault it's not a right but an at the prison rule as you may not do this if that is the prison rule and I know you don't think it is tell me why the discipline in this case was I think you would say violates due process there are three things there I just want to first acknowledge that your honor recognizes we don't agree that that that is the prison rule that's what this DHO said in the context of the 224 and I understand and the 7th Circuit is an outlier in that but the 7th Circuit opinion in any event was about a due process rule correct and the question here is what we have is a prison regulation that uses the word assault the definition of assault isn't even in the regulation is it your honor the definition of the assault is in code 224 but it's not in 541.8 I see but it's in it is in a prison document yes not just in the DOH correct and that definition is essentially the common law definition yes without the common law defense right without I mean and so can we talk can we deal with this case without getting to the defense my understanding is that we can because the question is was there actually an assault and that depends on whether it was unwanted and Mr. although the DOH is that what they call it DHO DHO says that Mr. Wheatley expressed his gratitude he did more than that he said it was it was not unwanted in the past tense at the time isn't what I understand him to be saying so if one takes that as and but the DHO also says that he is giving Mr. Wheatley less credit less credence I don't know what less credence and more credence means so what do we do how does that fit in yes your honor that's interesting because the DHO gestures towards making a factual finding about weekly's credibility and whether or not it was unwanted but never does ultimately he does say you're you you've changed stories about whether you were his friend or not his friend and therefore I give your statements less less weight he says right so two things first of all about weekly statements second of all again the DHO never relies on week statements or weeklies consent or non-consent in its ultimate determination it's instead it says it's by definition an assault but as the weekly statements both his 2010 statement and his 2016 statement said it's it wasn't an assault well he said it wasn't an assault I agree he never said I consented in advance to mr. Jordan stepping on my hand did so right as we say in our brief and point out it's somewhat intuitive but to to not consent is not the same as to not invite and we don't know weekly state of mind and but there is some others that's just person is the question I was trying to take you up to which is let's assume that defense of others is not incorporated into the prison thing is there evidence here of an assault and what's in this record is evidence that mr. Jordan said break it up and they then they continued to tussle the people on the ground they did not they did not break it up when he said break it up they they broke it up after he stepped on week mr. weekly's hand that's what the video shows yes he stepped on the hand and said break it up and they broke it well does this that's what I was gonna ask I thought the record showed that he said break it up and then stepped on his hand am I wrong about that my understanding is it was essentially coterminous the timing well I guess my question is couldn't a finder of fact find that when somebody said break it up and the people can if it if he said it first and then the people continued to fight that there was no consent to the touching your honor no that may not be the fact in this case that's not the record is that the record that's my question I don't agree that that is the record well tell me tell me we're in the record also the kill me what would just tell me since we're we're the record may be of some importance tell me where you're in the record I can I can determine whether or not he said it as he stepped on his hand or before he stepped on this is a description of the salt the description of the video is at page 59 of the record and there's also a report from a from an officer what does he say he just repeats what the video showed nobody saw it right and we don't have the video we don't have the video so what is the officer say the video showed which is I think what the DHL was basing his conclusions but can I just ask your honor I don't think I'm understanding the import of this well here so let me think they may make no difference to me it seems to me that a finder of fact could infer consent if somebody said break it up people ignored him and did not break it up and then and then thereafter someone stepped on the hand of one of them who can infer the absence of consent and so my question is can I tell when the break it up occurred with respect to the stepping on the hand my recollection although I must admit you now got me doubting myself that the the officer seemed to say he first he said break it up and then stepped on his hand and suggested it was essentially contemporaneous I'm trying to figure out where in the record since I don't have the video I can find this and miss Tucker will give you a couple minutes for rebuttal and then I'll have a question after you're able to respond on these record issues thank you which page number did you say it was the description 59 your honor and I believe also at 209 at 209 it's reproduced in the order of the magistrate judge so I guess I have a different question is there a difference between greater weight of the evidence some evidence how does it compare to substantial evidence we could talk all day about this record but this is an administrative finding of fact by people who were still somewhat removed but by law closer to the incident how are we to assess the standard of reviewing this de novo but what's the standard of fact-finding that we're supposed to hold the Bureau to thank you your honor right so mr. Jordan presented claims both under due process the due process clause which is the sum evidence standard as outlined by Hill and the greater weight of the evidence which is the the regulations requirement that if there is conflicting evidence which there was here that the matter be determined by the greater weight of the evidence what's our standard of review of the the administrative finding that the greater weight of the evidence supported discipline we don't get to know but I was certain you have de novo review to determine whether the greater weight of the evidence was met and Hill that's the that's the question I think yeah judge Johnso is asking or is our review to determine whether any rational finder of fact could have found this by the greater weight of the evidence I mean that's what we typically do in criminal cases for example even though the proof has to be beyond a reasonable doubt our review is just to see whether any rational finder of fact could have found it by that standard I don't believe this circuit has stated that there has been a court that said it should be whether any rational finder of fact could have so found and I will get that case for you and that's that's I think that is the standard that's what I'm what what's the it the it is in the instance of a 20 to 40 for whether the there was a greater weight in what context is what I'm asking whether there is it in it in reviewing a prison finding a fact in it in a disciplinary case or what I mean what in what context are we doing this in the context of whether the I know but but what is the the statutory I mean it's not what we do in a 2255 this is not a 2255 right in say 20 this is a 20 this isn't a 22 2241 yeah all right is that the context or is it specifically in the prison disciplinary context or in what context are we are we talking about this well I we're talking about it in the context of the 2241 under prison just I'm sorry your honor I'm not being very helpful but I think that regardless of the standard here it is met because the prison and then the magistrate judge and again this court is the first court to review the magistrate judge's decision here both of them said it doesn't matter whether or not there was an and where did where did did where did either of them say it doesn't matter that there was unconsented touching I know you think the touching was unconsented but I don't see either in the magistrate judges and really it's the district court it was page 2 mm-hmm page 222 of the excerpts from the order of the magistrate judge petitioners focus on whether or not the contact was see consent is different than wanted isn't the magistrate judge is conflating the two and I thought generally everybody was complaining yes we are it has been yeah throughout this one thing I was curious about is in the law of assault generally or in this particular context it is the unwanted a is it his state of mind that matters is it Jordan the state of mind that matters is it an objective person state of mind that matters how do you decide what's unwanted that's a good question your honor I think here we don't have to get to that because weekly had the only evidence they have as to weekly state of mind was that it was not unwanted right and the only evidence we have as to Jordan's state of mind was that he was intervening to break up the fight not to I'm sorry and don't worry about your time for a moment is is unwanted the test or is consented the test I in looking at I mean this is a little bit of a strange case because consent is normally an affirmative defense but it seems to be under this prison regulation one of the elements of the offense the absence of consent the language unwanted different than consent well the language at issue is unconsented to which is a little interesting that they chose to focus on that because it also the code also encompasses battery and the unconsented to touching is much more difficult yeah this is I mean it's it's somewhat difficult to fit this into common law or even outside pegs because in the common law the assent the the offense is the unconsent is the touching the offense of consent seems to be built into the elements of the offense and that's why I'm asking whether unwanted is the same as consent. For our purposes I would say there's no meaningful distinctly. Again I'm having trouble finding with the D.H.O. said here but I'll maybe I can ask you about it when you get back up. Yes he said essentially I thought he said this is essentially automatically an assault. That is what he said your honor by definition the action was an assault with no examination of the elements. All right thank you Ms. Ducker. We'll give you two minutes on rebuttal. Thank you. Mr. Schmidt. May it please the court. Good morning my name is Mike Schmidt I represent the respondent warden. This court should affirm the lower courts detailed comprehensive and legally correct order upholding the prison disciplinary findings. I'm going to jump into some of the questions you guys had. Can I jump into one of them because this is the one that surprised me. Is there any support in the record or any finding that Jordan first said break it up and then stepped on his hand? Fair question there isn't any and with respect to Judge Hurwitz there it would appear and I'll concede it to plaintiffs and petitioners counsel it would appear the best that we can glean from the available evidence is that it was probably coterminous. I mean within seconds. And Jordan himself says that it was in the other order that he first stepped on his hand and then said break it up. I think that's fair to say. Assuming that's true what is there and assuming as I think is probably correct given the regulation that it's your burden to show the absence of consent what is the evidence of the absence of consent? Very good question I think that actually is the nub of the the crux of this this this case because it relates to all three of the the issues being presented it's an inference and to go back to what Judge Johnstone was referring to and Judge Berzon this is an objective standard it's a reasonable person standard to the extent that you at all review whether or not self-defense or defense of others plays into this. We're not talking about defense of others we're talking about the unwanted element. Correct. Let's back out the defense of others. Fair enough then the evaluation because all you're getting is self-serving statements that's just the nature of the crime the incident so to the extent that you have to decipher what occurred there. Why is it self-serving for Mr. Wheatley to say I was it was not unwanted who's he serving by saying? We get back to Judge Horowitz observation that we had conflicting credibility statements. Well whatever but it's not self-serving on the part of Wheatley. It is on the part of Wheatley if they became friends. So in 2016. He became friends because he was grateful to him because he saved him from dying that's why but they became friends. There can be all kinds of reasons for loyalties in the prison system and respectfully so you know if at 2010 he says we don't know each other and then in 2016 he says we were friends. He didn't say we were friends. He said it was my friend. It was my friend. Right but he didn't say we were friends. Short answer is we don't know. We don't know why they were friends. Correct. So and I don't it seems to me the real question here is not whether the DHO should have credited or must have credited Wheatley's statements and by the way none of them say I consented at the time to the touch-in. My question is what is the what is the evidence of the absence of consent here? A reasonable finder of fact has to find I think under this circumstance with this strange prison rule where it's not an affirmative defense but part of the elements that the touching was unconsented to. Yes. So tell me where tell me how a finder of fact on the evidence in this case could reasonably find it was unconsented to. And I apologize that was Judge Berzon's original question. Yeah and it's still and that's why I want to take you back to it because it's the critical question. I was getting there. So in order to appreciate how that finding came about one needs to first understand the dynamics of the original assault. The original assault is Mills attacks Wheatley. Mills has a knife Wheatley takes it away. We read the record and unfortunately we don't have the video. Correct. So tell me. So when Jordan the petitioner enters that that combat he is unaware of the origin of that combat. When he enters the scene he sees Wheatley with the shank and Mills is on top of him. And when he enters. Where's Mills being on top of him come in come from by the way I don't know if it matters but I I the DA show says that and maybe because he's looking at the at the film but the the written evidence seems to be that they were side by side. I don't know whether it matters but I don't know where that's the notion that he was on top of him came from. Maybe it doesn't matter. The point is that the victim and this is what I'm alluding to about the origin versus when the petitioner approaches the combatants. When the petitioner approaches the victim is now defending himself and has rested away the shank. So that's what Colton Colton's report says that everybody says in the first hearing. Mr. Jordan says. That's what happened after after the decision to reach the court. He says that's what's happened. So do we have that is my question. Do we have the Calton report in the record. The which report. The report that says. SIS tech reported that he viewed video con and reserved and everything else. What is that in the record in front of us. It's in. It's Lieutenant Allen's statement. Where is it. Where's it I mean it says and it says in the magistrate judge's report it's. It's what S.I.S. tech Calton observed is is Alan just reporting what Calton observed. Calton reviewed the video correct. Yes I believe. I believe Alan reviewed the video as well. Okay so. Wherever. This this talks about. Response document twelve exhibit a attachment to. The magistrate judge's report. Where is that in our record. It's not in the excerpts of record as close as I can find is it somewhere else. In the record. I did come across a judge. Okay well. We can keep looking I don't want to use your time thank you. It was. I'm trying to understand. The usual course of these. Findings for for disciplinary purposes. Should we expect for example finding. A specific finding on the record that touching was unconsented. If it were an element. Yes and I think you can still find that and I'm I'm getting there with those two it did the did the. What's your your best excerpt from the D.H.O.'s decision that the D.H.O. found that it was funny not incidental because it met the definition of assault. But that based on his review of the record. Which need only meet this lower standard of yes some are greater evidence well so it was unconsented so you have the the participants. Statements which I submit to are self-serving. Regardless of that I I I want and I'm looking at the agency that's we're doing right so the agency looked at the combatants looked at the circumstances how the roles it flipped how the victim was now. The one question is as I understand nope. The D.H.O. said this by definition assault. Right you just say that yes did he ever make a finding. That it was. I want. You've made a finding that was unconsented to it's a third. Third page of the D.H.O. Fourth page. We have. Roman numeral number seven. In the S.E.R. it's 41. In the D.H.O. would be the. The fourth out of the five pages. S.E.R. tell me again. 41 percent. S.E.R. 41 yes. So you have Roman numeral seven and it defines assault. And then it gives its opinions or reasons for finding that assault. Is this the third. Rehearing finding. It's the 2016 finding which is being appealed yet the last four yes. And in in the crux of that is that no no victim would consent to being interfered with this is the answer to both of your well in fact this one would have. Because he was not actually the original victim. And he. Was the original victim. Now he was the original victim right. And he had and he. He was the original victim. He addressed it the the knife away or the the shank away correct but he had no reason to think he was to be able to hold onto it. So we don't know. I know we don't know but if you want to speculate as to whether he would have. Appreciated somebody coming in and and getting rid of that knife and and making this thing at least non-lethal he probably would have because he had had at the moment but he had no reason to think he was gonna keep it. In petitioners own statement he said that. That Mills came after him with the intent of murdering him. That's how terrified he was that's how terrified you know he's in that in a few seconds in which. That victim sustained cuts to his neck. Serious enough to have to be taken out of the FMC out of that federal penitentiary to a local hospital for treatment. That's how serious his neck lacerations were. And therefore the fact that somebody got the knife out of the way was quite possibly what he said it was what I want you to know it's perfectly logical it would have been. After the fact he said that. The sequence of weekly statements. For a moment. As I recall. At some point. Mr. Jordan tried to get him to come to I think it's the second hearing. The first three hearing. And he said I'm not going to come. Look at the video which shows everything. So he wouldn't and he wouldn't be interviewed at that point. And he later submits a declaration or. Very long one. But he doesn't that's not he does not consenting to be interviewed at that point is he it was a request to be interviewed at that point this is of the petitioner or weekly weekly. Weekly says three things and he says something at the first one. I. He says at the second one he says look at the video I don't have anything to add. At the third one he has a declaration. What was he ever interviewed in and in and any of those occasions and is this record indicate whether he would he can. Consented to be interviewed or not. And I do see my time is up you can take time to answer I don't believe the record indicates. How or what precipitated his. His varied. Statements that he's here I know we know from the record that he declined to show up at the second one correct Mr. Jordan asked that he be there. And his response was look at the video which shows everything. I just don't know whether. When you said he he declined to be interviewed. I'm trying to figure out how I can find that out from the right. Apologize I didn't say he declined to be interviewed I I don't know that we know. What precipitated his interview or two or decision was interviewed a third time. He was. I'm sorry. Third time he was interviewed correct. So you said that there was a finding about the. On wantedness on page forty one. What I see is that the D.H.O. says. That. Jordan stepping up in May weeklies arm is by definition an assault. Parentheses unwanted touching of another. Is that what you're saying was a finding that it was unwanted. I'm reading at the bottom of. Forty one. Forty one of the S.E.R. Yes sir. Okay I'm here. Assaulting another inmate by putting a foot on their hand or arm during a physical altercation between two inmates can escalate the incident between both inmates. But that's not a finding about whether or not you want to. These are reasons for the same. The actions and actions taken. These are the reasons. That's the D.H.O. report and I want to know is whether there's a finding that it was unwanted. I would submit that this is the way that a D.H.O. would indicate this is their finding. I mean these are the conclusions. But he didn't say it was. He seems to be saying and he said in the other sentence I read. That's essentially is putting a foot on their hand or arm during a physical altercation is an assault. On wanted or not. In the preceding two pages they discussed the. The impact of. Putting a foot on a combat right I know how it can elevate into a melee so was he applying a per se rule. Per se rule per se with whether it's wanted or not. As in strict liability or well essentially that whether it's wanted or not that seems to be what he's saying it's my definition of song no I would say it's an objective standard. But where does he find objectively subjectively or otherwise. That it was in fact unwanted. Because no no reasonable victim no reasonable person in that position would consent but did he say that. Or did he make a finding of any kind about. My wrecked my recollection is that he did well I can't find and I never did I look carefully. Above the part number as above section seven about four paragraphs up so still on the same page but under would be a Roman numeral five. The D.H.O. Believes that Jordan stepping on weekly's hand or arm rendered him with only one arm to defend himself against mills who was on top of inmate weekly. D.H.O. Believes that this could have resulted in mills having an advantage against weekly. And that incident could have resulted in more serious injuries as well true I mean that's what it is not of his troops to us is what he said but he but these are insane. And weekly says it was not unwanted and he. I mean except for this very peculiar credibility find it which doesn't say I'm not to believe anything he said it says I'm not gonna believe I'm gonna give him less credence. But he never says I'm not giving that credence and he never makes a finding of that. I would I would submit that to in the capacity of a of a detention officer. This is their way of making a finding this is their reason conclusions in this report. Do you agree that. We're reviewing. Whether. The. Bureau met its own standard of proof de novo. You would review whether or not the petition was. Denied de novo you would you would review the facts findings made by the lower court. For clear air and the lower court now there's no lower court finding we're looking at a record and the bureau's own standard of proof for the regulatory standard is the greater weight of the evidence and the due process standard. Is some evidence you agree with that in our our review then. Similar to other. Review of administrative determinations. Of whether they met their own standard for our standard under due process. That's that's de novo. Yes okay. And you don't contest. I take it that in this habeas proceeding. We can properly review whether or not they met their own regulatory standard. As opposed to simply whether or not they. Afforded due process. So we haven't briefed. I I correct. So that's why we're she seems to me there's two different standards that review then for two different claims made by Mr. Jordan shows due process claim. We all we see is whether there's any evidence that's run the regulatory claim if you will because there's no statute here. We review to see whether any rational finder of fact could have reached the conclusion I I agree with that and and there's an important caveat that sometimes gets omitted. With respect to the greater weight of the evidence. The some evidence standards applies to everything. The clear weight of the evidence only applies when there's conflicting evidence the greater weight the greater weight I'm sorry yes. And I guess just to follow up on and Richard with his question because of the habeas posture. This. Petition does it does that. Suggest that. Does or does not the. Prison regulation here have the status of a law that we're reviewing. For whether Mr. Jordan is that detained in violation of. Well I mean if you it wouldn't be a criminal law to an administrative rule. So. I'm I'm I'm guarded about what the court where the questions going to work I'm just trying to figure out we've heard I think we. In the parties. On whether it's a greater weight of evidence whether we can hold. On our de novo review yes review the administrative record to see whether they met their own standard of proof. I would I would submit. One important. Consideration. The greater weight only applies when there's conflicting evidence. We believe there's enough evidence that's not conflicting that's disputing evidence. Well they're not even conflicting evidence on this unwanted standard. Issue. I mean there's only. There's not not even conflicting evidence. Unless one draws. Aside from the fact that there was no finding. So what do we do with that. I would. I respectfully disagree on whether or not there was no finding well where. I don't I don't I don't imagine sure but but every time I've asked you where the finding is you. Read me a finding about something else. I find the finding about you know whether he in fact steps in his hand. And and whether in fact. The weather Miller was on top of him and so on but but not about the unwanted. And then we have weekly saying that it was not unwanted. Was not unwanted in the past as well as I'm grateful for it. I mean in so far as as the as the district if the the only possible finding is when the D.H.O. says something about whether he's grateful or not but he didn't only say he was grateful he said. And he it was unwanted. So I just having a hard time finding. Both how it could not be against the greater weight of the evidence because there doesn't seem to be any contrary evidence and there doesn't seem to be a finding. I understand that. Your honor's concern. We'll ask question for free sit down. I know weekly uses the term unwanted. Is it your view that unwanted and unconsented mean the same thing in this for this purpose purposes of this case there those definitions can overlap in in sort of a common usage and for purposes of this case I'm not going to I'm not going to say that there's a difference. And you're not contending that there had to be an affirmative. Showing of consent in other words you have to say I please step in my arms. Or it's not correct. All you have anything else. But thank you. Just with respect to the conflicting greater weight. I mean the reason why we can go with simply the. Some evidence is because the uncontroverted. Facts the finding. The fact that the defend the petitioner stepped on the arm. The fact that combatant. Roles and shifted and now he was stepping on the arm of the victim. No reasonable victim would. Assent to that in the moment in the moment. And that's the evaluation that was being done. Thank you and I'd ask you affirm the lower court's decision. Thank you. Thank you your honor. Well in fact the government. Acknowledged in its answering brief at twenty one quote crucially and unbeknownst to the petitioner at the time he was stepping on the victim so they've conceded that. He Mark Jordan had no way of knowing in what position the victim was. Whether weekly was the aggressor or the victim. And furthermore as judge for zone points out. The fact that he may have been. At that moment. That it may have begun with him as the victim and now he got the knife. Does not lead. To the inexorable conclusion that he would not have won. It's not the next it's not the question is whether it's a reasonable conclusion. Well it could have been but it also wasn't a conclusion made by the D.H.O. because the D.H.O. again didn't never made a finding and in fact let me ask you. Let me ask you this and I think I. I recall the record correctly on this point. Your client never claimed that he had the consent of Mr. Weekly did he. Our client was never asked whether he had that's not that's not what I'm asking. It never came up. Normally one would think that if you were. If you if you had the consent of someone that you hit. You would know about that in advance and you would say so. But he never says so does he. It never came up your honor in that way. I also would like to point out. Welcome to this so can can we infer from. See it in a normal situation when consent is a defense to assault. The assaulter says oh I had his consent. And we don't have that here do we. This is an element in who had the burden of proof. The burden of proof was on the Bureau of Prisons to find that. Well but can you can you infer from Mr. Jordan. I know it never came up and he he didn't have you. At the time which would've been much better for him. But can you infer from the fact that he never claims consent. No you can say no you may not and I just would like to point out this is an unusual situation for this question to come up. I believe in most cases with an unconsented touching. As an issue it's not a knife fight between two people. Well in most cases with an unconsented touching it's an affirmative defense. And therefore the defendant has to prove that it was consented. This is strange because we all seem to agree in this case is an element given. So I'm just trying trying to figure out. Whether or not your client's failure to lead the hearing officer not to make any any any finding on it. So your honor that actually leads me to another point I wanted to make if the court would. So my colleagues suggest that you this court can find the fact of an unconsented touching and I disagree. This court first of all the record wouldn't support such a finding. But this court is not a fact finder and the fact that we keep grappling with this I is that. The requisite findings were never made by the D.H.O. The evidence was not sufficient for it to have made those findings but it did not in any event. And I'd also like to respond. Well that leads me to a question that Judge Burr's almost going to ask first. Let her go first. Well just my curiosity. And maybe it's we don't have time for this but. In fact. This is not. It's defined as an assault. By the. These regulations but in fact it's a battery not an assault that they're talking about right. Because it's not. That would be my that would be my reading but again the D.H.O. did not. It was actually an assault. Ordinarily this would not be an assault. Anyhow because it was. Whatever it was it was actually it actually happened. Correct. Just a really quick question. If. Do you want us to send this back to the prison. To see whether or not a finding of of non-consent of kids unconsented touching can be made. Because they fail to make one. Or you see. Use what do you suggest that it's a habeas which was what you do it correct your honor the relief we are seeking is for the court to. Remand to the district court with instructions to grant the habeas petition restore Mr. Jordan's 27 days of good time credit. And expunge his disciplinary record. The was it a conditional writ though that's my question. Is it a conditional writ based on them not. Making a finding. Of of of of of non-consent if you will or is it an unconditional writ. This is unconditional and the Bureau of Prisons has had 14 years with this. There were three hearings there were three reports. There were four habeas cases. These incidents took place 14 years ago. One of the witnesses is dead. We have any idea why they kept doing this over. I do not know your honor but it was exceptionally dilatory on their part. Here's a strange question is there any chance that having a mediator talk to the two of you would be of any use. I beg your pardon any chance to have a mediator. Talk to the parties about this 14 year old case would be of any help. Your honor. We did approach the government about a settlement. But it was not fruitful. So you you don't think I guess I'd ask both sides would mediation be. Beneficial. Potentially. We would prefer. A ruling of course. And they prefer ruling under which they would. I'm just trying to I'm asking why you're both here. Whether or not mediation might be beneficial. We ask the government attorney that. And I saw that there were. So every time the prisoner moves to another federal penitentiary the jurisdiction shifts to that locality. And for. About 10 years it was the it was kicked out the can was kicked down the road no question about it. Until 2016. That doesn't explain why you keep having new hearings you can. Have new cases with the old hearing but you keep having new hearings you know. Miss Tucker and I she alerted me to the fact that. Mr. Jordan was about to be moved out of Tucson. And. I saw my opportunity to escape this. And I I I said the answer is a mediation question. Yes all right so. I mean. The history is what it is it where you don't have to answer us today but I wonder whether or not. We might ask the parties to let us know within a brief period of time. Whether there. Because it it does seem to me and I don't mean to minimize this but it's 27 days of. Good time in a 30 year sentence and the events occurred. Over a decade ago so which I'm trying to figure out whether or not from either side's. Perspective it makes sense to get together and see whether some agreement can be made. I'm I'm I'm I'm a minion in my office I I I that's why I said you can take take some time to respond. Until until tense that next higher minion. Until about 10 seconds ago I didn't know me mediation was even a possible outcome. And we have wonderful mediators they might sometimes do. Surprising can manage surprising things and what we usually do. Is we don't tell you to go media we tell you. To have we said say to have a telephone call with the mediation office about whether you will go forward with mediation okay. My only trepidation about that your honor is I mean we look at the case law history the progeny of this kind of litigation. And there's numerous cases involving 27 days my fear is that. The precedent would get set. When we hear you but let me make it easy for you can say no you can say yes. Mediations don't set precedence they don't they sometimes result in settlements and they sometimes don't. And we shouldn't do any more today than just alert you to the possibility. That it's available let you talk to the other side. On that note. Miss Tucker if you have anything to close. Briefly and then. Thank you your honor's unless there are further questions. Okay thank you thank thanks to both counsel for their presentations and your patience with our questions. We
judges: BERZON, HURWITZ, JOHNSTONE